788 So.2d 1067 (2001)
Martha CARR, Appellant,
v.
Robert H. REESE and Janice Reese, Appellees.
No. 2D00-1645.
District Court of Appeal of Florida, Second District.
May 25, 2001.
Rehearing Denied June 28, 2001.
Gary R. Gossett, Jr., of Gossett Law Offices, P.A., Sebring, for Appellant.
Kenneth B. Evers of Kenneth B. Evers, P.A., Wauchula, for Appellees.
PARKER, Acting Chief Judge.
Martha Carr, the defendant in the trial court, appeals the order denying in part her motion to set aside a default judgment entered in favor of Robert H. and Janice Reese (collectively "the Reeses"). Under the unique facts of this case, the trial court abused its discretion in entering the default judgment against Carr and therefore again abused its discretion in refusing to set the default judgment aside in its entirety. Accordingly, we affirm that portion of the order setting aside the default judgment as to damages, but we reverse that portion of the order refusing to set aside the default judgment as to liability.
The record in this case reveals that the Reeses filed a complaint against Carr in February 1996 for an equitable lien based on an implied contract. The complaint alleged that the Reeses had entered into a one-year lease for real property and that they had made improvements to the property *1068 with Carr's knowledge and with the understanding that they had an option to purchase the property. They later learned that they had only a right of first refusal on the property rather than an option to purchase it. The complaint alleged that an implied contract was formed by Carr's acceptance of the improvements to the property and that the Reeses were therefore entitled to an equitable lien on the property for the value of the improvements made. Carr filed her answer and affirmative defenses, denying that any implied contract had been created and alleging that any improvements made were those specifically contemplated in the lease agreement. Carr also filed a counterclaim for damage to the property allegedly caused by the Reeses. In July 1996 and September 1996 the Reeses served initial interrogatories and a request to produce documents on Carr and noticed Carr's deposition. The deposition was canceled and rescheduled several times at the Reeses' request. Carr did not respond to the discovery requests.
In July 1997 Carr's attorney filed a motion to withdraw. The trial court entered an order allowing the attorney to withdraw despite the lack of discovery responses from Carr. A second attorney, Ricky E. Williams, filed his notice of appearance on behalf of Carr in September 1997. No further record activity occurred until October 1998 when the Reeses filed a motion to compel responses to their discovery requests. The Reeses scheduled a hearing on their motion to compel for December 1998 and sent a notice of hearing to Attorney Williams.
The trial court's notes from the hearing indicate that Attorney Williams did not appear, that the trial court would send a short letter to Carr, and that court staff would "call Ricky Williams' office and find out what is going on-is anyone going to handle this case." As best we can determine from the record, Attorney Williams was disbarred from the practice of law at some point between September 1997 and October 1998, and his office had been directed by the Florida Bar to make arrangements for other attorneys to take over the handling of his cases. Despite the fact that neither Carr nor Attorney Williams had appeared at the hearing and despite the fact that the trial court apparently knew that Attorney Williams was disbarred, the trial court granted the Reeses' motion to compel and required responses within fifteen days. The trial court mailed the order only to Attorney Williams.
In February 1999 the trial court sent a letter to Carr which read in its entirety:
As you are aware, a hearing on Plaintiff's Motion to Compel was held on December 4, 1998. Plaintiffs Motion was granted and the Court ordered 15 days for response by Defendant or Defendant's attorney.
The Court and Plaintiff's attorney will need to hear from counsel or yourself (if pro-se) to proceed with this case.
There is nothing in the record to indicate why Carr would have been aware of the December 4, 1998, hearing. Carr did not respond to this letter.
In March 1999 the Reeses filed a "Motion for Judgment by Default, or in the Alternative, Motion to Strike Pleadings," citing the continuing lack of discovery responses from Carr. The certificate of service reflects that the motion and the notice of hearing were mailed only to Attorney Williams. Neither Attorney Williams nor Carr appeared at the hearing on this motion. No order on the Reeses' motion was entered at that time.
Shortly after this hearing, the trial court served Carr with an order to show cause and a notice of hearing for contempt. The hearing was scheduled for June 3, 1999. *1069 Apparently, no record of this hearing was made; however, it is undisputed that Carr and Attorney Christopher Clark appeared at the hearing. At that hearing, Attorney Clark told the court that he did not have Carr's file but that he would make arrangements to get it from Attorney Williams' office. The trial court denied the Reeses' motion for default judgment and gave Carr fifteen days from the date of the order to serve discovery responses on the Reeses.
On July 19, 1999, the Reeses filed a renewed motion for sanctions, noticed the motion for hearing, and mailed the motion and hearing notice to Attorney Clark, but not to Carr personally. On July 21, 1999, Carr served her answers to interrogatories on the Reeses. Despite these belated responses from Carr, the Reeses went forward with the hearing on their renewed motion for sanctions. Attorney Clark appeared at the hearing by telephone. According to the trial court's order, Carr did not attend the hearing. No evidence was taken at this hearing, and the trial court's notes indicate that the entire hearing lasted five minutes.
At the conclusion of this short hearing, the trial court entered its written order "Granting Renewed Motion for Sanctions and Final Default Judgment." In this order, the trial court stated that it had warned Carr of the consequences of her failure to provide discovery responses and specifically stated that it had "stress[ed] the importance of her compliance" in the February 17 letter. The trial court also stated that it had verbally informed Carr and her new counsel (presumably Attorney Clark) at the June 3 hearing of the ramifications of failing to comply with the court's order. The trial court then found that while Carr had served responses to the interrogatories, she had done so twenty-two days after the court's deadline. The trial court also found that Carr had not served responses to the request to produce documents. Based on these findings, the trial court found: "Defendant's failure to comply with the various Court Orders was a willful and intentional failure to obey Orders of this Court. Furthermore, the Court specifically finds the Defendant displayed a gross indifference and deliberate and contumacious disregard of this Court's authority." After finding that Carr had failed to demonstrate any mitigating circumstances at the hearing, the court struck Carr's pleadings and entered a default judgment against her. The court then awarded the Reeses money damages of $30,000, prejudgment interest, attorney's fees, and costs.
Shortly thereafter, the Reeses obtained a writ of execution and sought to levy on Carr's real property. Carr then filed a motion to set aside the default judgment and to stay execution. At an evidentiary hearing on this motion, Carr testified that she had prepared written responses to the interrogatories for her first attorney before he withdrew. She also gathered records and photographs and gave them to her first attorney. Carr did not know what happened to these materials. After her first attorney withdrew, she retained Attorney Williams to represent her. Attorney Williams lost the file he received from Carr's first attorney. Carr then gave Attorney Williams her copies of all the file materials, but Attorney Williams lost those as well.
Shortly after this, Carr got a call from Attorney Williams' office telling her that Attorney Williams had been disbarred but that another attorney was taking over his files. Carr agreed to representation by the new attorney. Carr did not hear anything from anyone for a long time, and the new attorney, Attorney Clark, did not return her telephone calls. Finally, Carr *1070 went to Attorney Clark's office unannounced. She then learned that Attorney Clark did not have her file from Attorney Williams. Attorney Clark accompanied Carr to the show cause hearing at which Attorney Clark informed the court that he would get Attorney Williams' file and serve discovery responses. The trial court gave him ten days to do so. Carr also told Attorney Clark that she would again recreate what she could from the file. Within ten days, Carr went to Attorney Clark's office with the file materials that she had recreated. Attorney Clark then took the papers from Carr, gave them to his assistant, and told his assistant to fax them to the Reeses' counsel that day. Carr did not hear anything further from Attorney Clark about the matter. Carr testified that she never failed to attend a hearing of which she had notice and that she had never knowingly failed to comply with any order entered by the trial court. She denied ever attending any hearing other than the one on the order to show cause.
At the same hearing, Robert Reese testified to a number of medical problems and conditions that he has suffered since the suit began. He also testified that at least one of the witnesses he planned to call in support of his case had moved to Michigan. However, he admitted that he remembered the events that gave rise to this litigation and that he could testify about them at trial.
After hearing this evidence, the trial court set aside the default judgment's award of damages, attorney's fees, and costs but refused to set aside the default judgment of liability. The trial court also refused to set aside its order striking Carr's pleadings and stated that the case would proceed further only on the amount of damages, attorney's fees, and costs to be awarded. The pending sale of Carr's real property was stayed. Carr then brought this appeal, seeking relief from the default judgment of liability.
We recognize that a trial court's decision imposing sanctions for discovery violations must be affirmed unless the trial court abused its discretion in imposing the sanction at issue. Commonwealth Fed. Sav. & Loan Ass'n v. Tubero, 569 So.2d 1271, 1273 (Fla.1990); Stone-Rich Props., Inc. v. Britt, 706 So.2d 330, 331 (Fla. 2d DCA 1998). However, having reviewed the record in this case, we conclude that the trial court abused its discretion in entering the default judgment and then in refusing to set it aside in its entirety. We reach this conclusion for five reasons.
First, the trial court's conclusion that Carr had personally willfully disobeyed or disregarded the trial court's orders is not supported by the record. While the trial court's order contains the conclusion that Carr's conduct was willful, the few factual findings allegedly supporting this conclusion are not supported by the record. For example, the trial court supported its conclusion that Carr had willfully disregarded the trial court's orders by finding that it had "stressed the importance of her compliance" in its February 17, 1999, letter. However, the February 17 letter does not support the trial court's conclusion. The letter states only that Carr had been ordered to respond and that "[t]he Court and Plaintiffs attorney will need to hear from counsel or yourself (if pro-se) to proceed with this case." It did not advise Carr of any of the possible consequences of noncompliance with the court's order. Given that this letter is directed to Carr, a lay-person, it is simply insufficient to support a finding that the trial court had stressed the importance of compliance with its orders to Carr.
The trial court's order also finds that it stressed the importance of complying with its orders to Carr personally at the hearing *1071 on the order to show cause. However, there is no transcript of this hearing in the record on appeal, and none is available. Carr does not deny that she was made aware of the importance of her compliance at this hearing. Rather, she asserts that this was the first time that she was made aware of the problem with the discovery responses and that she complied with the court's orders to the best of her ability shortly thereafter. Her compliance after that date is supported by the record. Thus, Carr's actions after the trial court's admonishment do not support the trial court's conclusion that she willfully disregarded the court's order.
The trial court's finding that the Reeses were prejudiced by Carr's inaction is likewise not supported by the record. The record reflects that the Reeses served their discovery requests on Carr in the summer and fall of 1996. The Reeses did not file their motion to compel responses until October 1998 and did not set the motion for hearing until December 1998, more than two years after the discovery requests were served. The default judgment at issue was entered in August 1999. Thus, the majority of the delay was due to inaction by the Reeses-not due to Carr's failure to comply with the trial court's orders. Further, the trial court had absolutely no evidence before it when it entered the default judgment that the Reeses had suffered undue expense or loss of evidence due to Carr's inaction. Accordingly, the trial court's finding that the Reeses were prejudiced by Carr's failure to comply with the trial court's order is not supported by the record. This lack of factual support for the trial court's conclusions requires reversal of the trial court's order refusing to set aside the default judgment in its entirety.
Second, Carr's testimony at the hearing on the motion to set aside the default judgment established that she gave her attorneys the materials requested by the Reeses on three occasions. On the first two occasions, the attorneys apparently did nothing with these materials. On the last occasion, the attorney did provide the materials to the Reeses, albeit late. This unrebutted testimony establishes that the trial court's ruling punishes Carr for her attorneys' failures contrary to the general principle that "[a party] should not be made to suffer the loss of viable claims due to [its] attorney's malfeasance where there is no evidence in the record to indicate that [the party] personally engaged in misconduct." Walicki v. Waste Mgmt., Inc., 703 So.2d 1095, 1096 (Fla. 2d DCA 1997). This misdirected punishment requires reversal of the default judgment.
Third, there is no indication in the record that the trial court considered all of the factors that should be considered before sanctions are imposed. In Kozel v. Ostendorf, 629 So.2d 817, 818 (Fla.1993), the supreme court set out the appropriate inquiry to be made before a trial court determines that an attorney's conduct warrants dismissal or default:
[A] fine, public reprimand, or contempt order may often be the appropriate sanction to impose on an attorney in those situations where the attorney, and not the client, is responsible for the error. To assist the trial court in determining whether dismissal with prejudice is warranted, we have adopted the following set of factors set forth in large part by Judge Altenbernd: 1) whether the attorney's disobedience was willful, deliberate, or contumacious, rather than an act of neglect or inexperience; 2) whether the attorney has been previously sanctioned; 3) whether the client was personally involved in the act of disobedience; 4) whether the delay prejudiced the opposing party through undue expense, *1072 loss of evidence, or in some other fashion; 5) whether the attorney offered reasonable justification for the noncompliance; and 6) whether the delay created significant problems of judicial administration. Upon consideration of these factors, if a sanction less severe than dismissal with prejudice appears to be a viable alternative, the trial court should employ such an alternative.
In this case, the record does not establish that the trial court considered all of these factors. The trial court's order does not discuss whether Carr or her attorney had been previously sanctioned; it does not address whether Carr had offered any justification for her noncompliance; and it does not address whether the delay created any significant problems of judicial administration. Most importantly, it does not address whether the trial court considered any sanction less severe than the default judgment. The trial court's failure to consider all of these factors requires reversal of the default judgment in its entirety.
Fourth, the default judgment entered by the trial court runs contrary to the purpose of sanctions for discovery violations. The purpose of imposing sanctions for discovery violations is not to punish, but rather is to ensure compliance with the trial court's order. Allstate Ins. Co. v. Biddy, 392 So.2d 938, 942 (Fla. 2d DCA 1980) ("[The rule providing for sanctions upon discovery violations] is not penal. It is not punitive. It is not aimed at punishing the litigant. The objective is compliance-compliance with the discovery Rules [sic]."); Garden-Aire Vill. Sea Haven, Inc. v. Decker, 433 So.2d 676, 677 (Fla. 4th DCA 1983). Further, the harshest sanction should be imposed only when there is evidence that the party deliberately and willfully refused to comply with the court's order, not when the failure to comply is due to confusion or inability. Garden-Aire, 433 So.2d at 678 (noting that dismissal or default is rarely appropriate when the record does not reflect a willful refusal to comply with the court's order). See also George A. Morris, M.D., P.A. v. Ergos, 532 So.2d 1360, 1361 (Fla. 2d DCA 1988) (holding that dismissal is not necessarily warranted even when a party's conduct in response to discovery requests is "laggard and slothful"). Therefore, the imposition of sanctions after the party has complied, or at least partially complied, with the trial court's order is contrary to the purpose of the sanctions.
In this case, Carr served her answers to interrogatories on July 21, 1999, after the time allowed by the court's order but before sanctions were imposed. This shows compliance, albeit not complete compliance, with the court's order rather than a deliberate and willful refusal to comply. Thus, imposing the sanction of default judgment was inappropriate under the circumstances.
Fifth, the unique circumstances of Carr's representation do not support the entry of the harshest sanction available in this case. The record reflects that the trial court allowed Carr's first attorney to withdraw when the discovery responses were already a year overdue. The trial court made no effort to ensure that these responses were served prior to the attorney's withdrawal. Thereafter, in December 1998 the trial court entered an order compelling responses to the discovery requests at a hearing that neither Carr nor her new counsel, Attorney Williams, attended. The trial court entered this order despite knowing that Attorney Williams had been disbarred and that the Reeses had mailed the notice of hearing only to Attorney Williams. The court then mailed its order compelling responses only to disbarred Attorney Williams. Two months *1073 later, the trial court sent the February 17 letter to Carr. This letter did not tell Carr what the court expected of her and did not explain the consequences of failing to comply with the court's orders. When Carr did not respond, the trial court set a hearing on an order to show cause. The show cause hearing was the first Carr knew of the problems with the discovery responses and the possible consequences of her failure to comply. While Carr did not comply with the court's order within the time allowed, she did do so shortly thereafter. Given these circumstances, the trial court should not have entered a default judgment in the first place and should have set it aside in full when asked to do so.
The trial court's entry of default judgment and subsequent failure to set aside the default judgment in full constitutes an abuse of discretion under the facts and circumstances of this case. Therefore, we affirm that portion of the trial court's order that sets aside the money judgment but reverse that portion of the order that refuses to set aside the default judgment of liability.
Affirmed in part. Reversed in part. Remanded with directions to the trial court to set aside the default judgment and the order striking Carr's pleadings and to conduct further proceedings on the issues of both liability and damages.
NORTHCUTT and CASANUEVA, JJ., Concur.